Our final case for this morning is Petar Yusev and Katerina Yuseva v. Attorney General Sessions. Good morning, Your Honors, and may it please the Court. My name is Daniel Thoman. I represent the petitioners, Petar Yusev and Katerina Yuseva. Today we present three primary arguments for review by this Court. The first is whether Petitioner's motion to reopen following the Board's June 17, 2015 decision was timely. The second is whether the Board incorrectly adjudicated Petitioner's motion to reopen. And the third is whether the Board incorrectly failed to reconsider its January 19, 2016 decision. You know, you argue that the motion to reopen was timely because it was filed within 90 days of the Board's June 17, 2015 decision on the motion to reconsider. But can you point to any authority that would allow a motion to reopen challenging a decision on a motion to reconsider rather than the underlying decision? Your Honor, I cannot, but I think that what's happening here is a little more complicated. The Board's decision on the motion to reconsider involved sui sponte reopening for purposes of addressing voluntary departure. And that is why we believe that this requires a decision. But that's not what you're challenging right now. You're not complaining about voluntary departure. You're trying to use the event of the voluntary departure decision on June 17 to reach back and allow you to attack the April 7, 2015 decision. And the government has a footnote in its brief that I think pretty conclusively shows that that's not the way the system works. The 90 days to attack anything in the April 17 decision runs from April 7. Your Honor, the arguments that the government makes in its footnote, which I'm obviously quite familiar with the footnote, are actually distinguishable from what's happening here. And again, what really counts is the extent of the sui sponte reopening by the Board. Why? I mean, I just don't see. Unless you're attacking something about what the Board actually did on June 17, but you're not. You're not saying he shouldn't have been granted voluntary departure. You're not saying he really didn't post the bond. You're saying other things that don't have anything to do with what happened in June. Correct, Your Honor. The issue is that in disposing of the motion to reconsider, the Board, without authority to do so, reopened the proceedings for the purpose of granting the voluntary departure. Why do you say the Board, since you are the one who's stressing the Board's sui sponte powers, under what theory did the Board have no authority? And why does it help your client if the Board had no authority? It helps because if the Board's sui sponte reopened proceedings, there is nothing in the statute of regulations that provides for limited purpose reopening. If the Board acted on its own initiative to reopen the proceedings sui sponte, it reopens the entire proceedings. And that's what separates this case from those cited by the government. And that those cases involve the argument that the very fact of filing the motion to reconsider tolls the period for a motion to reopen. And that's not what we're doing here. This is not a case where the Board simply denied or dismissed our motion to reconsider. They took it upon themselves to reopen the proceedings to address issues therein. I would say they would have said they fixed one technical glitch because they now had evidence that the bond had in fact been paid. They fixed that and otherwise did not reopen. Except, Your Honor, that the regulations don't provide for that to happen. They don't say they can't either. Actually, Your Honor, the regs at 8 CFR 1240.26 C3 small 2 state that the Board will not reinstate voluntary departure other than within 30 days of filing the appeal when evidence is submitted. And further, the regulation at 1240.26 H allows reinstatement if the proceedings are reopened for purposes other than voluntary departure. So by the regulatory framework that's in place, the Board actually can only do what it did if it is reopened proceeding sua sponte. And that is what distinguishes this case from the other case law we've discussed. It reopened for purposes of fixing the voluntary departure. This is what it did. I understand that that's the government's position, Your Honor. We respectfully disagree. We think that the only way in which the Board could have done what it actually did under the regulations is to sua sponte reopen proceedings. And having done so, that is what resets the clock for the motion. It is not the argument, as was in, I believe in Sarmiento and Mutairi, where the argument was that the motion to reconsider tolls the period. That's not what we're alleging here. So, Your Honor, that is an important issue, obviously, because if the motion is timely or not, triggers in whether the Board incorrectly considered diligence, and also whether it was required to consider sua sponte authority in our motion. Your Honor, how do you respond to the argument that because the petitioners identified the potential and effective assistance claim in their motion to reconsider that was filed within the 90-day period, that there is no reasonable basis for failing to file that claim for four more months, which, of course, was then well beyond the 90-day period? Well, Your Honor, in practice, the way that the courts, including the Board, have guided immigration attorneys to file motions under matter of lazada creates the necessity for thorough investigation and some back-and-forth communication with the prior attorney in order to fully address the full extent of any ineffective assistance. The courts are very reluctant to grant these types of motions. And as a result, we really need to be very thorough before we can do this. If we rush a motion to reopen based on ineffective assistance, we may risk failing to uncover evidence which should have been presented, as well as raising arguments that are then going to be deemed waived in a subsequent motion to reopen for our own ineffective assistance in investigating these claims. So it's a difficult thing to do properly. Moving on, though, to the question of how the motion was itself adjudicated, I just want to clarify one thing that was not entirely clear on the briefs, is the way in which the past persecution and future harm was handled by the Board. They looked at whether the evidence sufficiently reflects that there exists a reasonable possibility of future harm. And this sufficiency interjection is troubling because if we show that there is a chance that they will affect it, that should suffice to show the required prejudice. In this case, the Board... How can the Board not be entitled to look at the quality of the evidence? You know, it seems like a strange argument to me. Well, Your Honor, had the Board simply said that the evidence does not reflect that there exists a reasonable possibility, they would have disposed of the claim and would be fine. But by interjecting that word sufficiently, they essentially elude... Why does that hurt anything? I mean, you know, they need to be satisfied to some degree of certainty, whether you call it sufficient evidence. We find sufficient evidence to support a finding of future persecution, whatever. You know, that would... Why is that an objectionable way of putting it? Because in this particular context of reopening, what they're supposed to be looking at is whether it could have affected the proceedings below. And in this case, they essentially... But they jump right to the ultimate question. Because actually, if it could have affected the proceedings below, but it's very clear that the answer has to be no, what's the point of going through that intermediate step? Your Honor, because what is required here is for them to just look back at whether, if this evidence had been presented by the prior attorney, that could have affected the proceedings. And they didn't think it could have, by the way. They thought that there was enough evidence on the same point before the immigration judge and the board that it couldn't have affected. We actually don't know that, Your Honor, because of the interjection of this Court sufficiently. And they do this repeatedly. Well, we do know what evidence was there. And we do know what evidence was being proffered, right? Can't we take a look at it and see if it looks cumulative? Yes, Your Honor. But the board did not state that the evidence was merely cumulative. They alluded to some purported sliding scale of when you have some evidence and when you have none. And we need to know where that line is between the two. If we present evidence that could have affected the proceedings, the board should not be able to say, well, that could affect proceedings, but not enough to my liking, without articulating where that line is. Okay. You can save for rebuttal, if you like. Thank you, Your Honor. Mr. Romnitz. May it please the Court, Your Honors. Tim Romnitz on behalf of the United States Attorney General. In this immigration case, petitioners challenged two decisions of the Board of Immigration Appeals, the first of which denied their untimely motion to reopen, one premised on ineffective assistance of counsel, and the second, their decision denying reconsideration of that decision. The standard of review in this case is abuse of discretion. To overturn these decisions of the Board, the Court would have to find the Board acted irrationally and without reason. In this case, petitioners simply could not show there was no rational basis for finding or finding this motion untimely, for denying ineffective assistance of counsel, and denying reconsideration. So starting with this timeliness issue. Would you please respond to the sua sponte argument that opposing counsel made? Well, first, I would say this argument is new. That was not the issue briefed. He argued that it was timely because of this voluntary departure issue. Secondly, the Board actually affirmatively declined sua sponte reopening in its decision. So what's your position about that? I mean, we've discussed the sua sponte power. Do you think it's possible for the Court of Appeals to find that it's an abuse of discretion not to exercise the sua sponte power, or is that something that's beyond review in your view? Under this Court's precedent, it normally lacks jurisdiction to review a decision to not sua sponte reopen, absent a legal error. Okay. So you'd have to find some other accompanying legal error, perhaps such as misreading the regulations. Maybe you can remind me. It's in the withholding statute that the Board will also look to the question whether a person who believes they may be persecuted can relocate within the country. Where is that rule? That's the Convention Against Torture. That's in withholding. That's in asylum. It's in all of them. Yes. Of what relevance, then, is that rule when one considers that Bulgaria is a member of the EU? Well, that would be a determination of, well, future persecution. It seems to me as a member of the EU, they're free to live anywhere in the EU. That's one of the EU's basic freedoms. That's an interesting point. I don't believe that's an argument that was ever bandied about below. No, but it's, you know, can you answer it? I've never had that issue actually presented, whether or not someone, since they're free to travel throughout the European Union, whether they can relocate anywhere in Europe. They're not only free to travel. They're free to establish themselves. They're free to conduct business. Their professional licenses have to be recognized. True. And normally when that question, this issue comes up about relocation, it's to rebut a finding of past persecution. In this case, there was no past persecution finding, so that issue was never addressed in this case. There was no finding. It was certainly alleged. Yes, it was certainly alleged. They wanted to establish their claims. However, the agency found there was no past persecution based on just merely two instances, one where the petitioner was just punched in the stomach by a police officer  I want to go to your brief for a moment. Are you arguing that the evidence that the petitioner sought to present in the motion to reopen was not materially different from the evidence that had already been presented in the case? Or are you arguing that the evidence, even if different, was still insufficient to support the claim of persecution? Essentially both. They're both two sides of the same coin, that argument, because what you have is you're trying to establish that there's documents that the prior attorney could have submitted that established their claim for persecution. And we are stating, or the agency found, that the evidence that they're claiming should have been submitted was essentially already submitted. There's nothing materially different they're presenting than the documents that were submitted to the immigration judge. So in that sense, it also doesn't establish reopening because it doesn't show any changed country conditions. For example, the evidence submitted to the immigration judge was a 2009 Amnesty International report, 2009 State Department report, and 2012 State Department report, all of which said the same thing, that this political party, OMO, Alinden, was not permitted to register as a political party by the government of Bulgaria because it was drawn upon ethnic lines. And they also reported there was some police harassment intimidation at rallies. If you look at all the documentation petitioners submitted with their motion to reopen, it says the exact same thing over and over again. All these documents simply reiterate this idea that this OMO Alinden has never been allowed to register as a political party despite joining the EU. The government of Bulgaria will still not allow them to register. So I take it in Bulgaria you couldn't have the Celtic Lawyers Society, which we have in Chicago, which is about to have their big annual event? Perhaps not. Do you consider that ethnicity? Oh, I believe they consider it ethnicity for sure. We have many, many ethnic bar associations in Chicago. I didn't know that. That's interesting. Thirty-eight. Thirty-eight, that's quite a bit. Wow. Countries you never heard of. Countries you never heard of. Otherwise, in summation I suppose, there is no use of discretion in this case because there's nothing arbitrary or capricious about finding this evidence was not materially different than the evidence previously submitted. Unless the Court has further questions, I will sit down. Apparently not, so thank you very much. Anything further, Mr. Tillman? Thank you, Your Honors. Just very briefly a few things that came up. The sua sponte argument was actually in our opening brief at pages 15 to 16. I thought I would note that it's not new. Regarding relocation because of EU membership, that is a factor to be considered by the immigration judge, but also the question is whether it would be reasonable to do so for the individuals in light of things such as their age, employment history, community ties, and things like that. So it's a question that we send back to the judge. And finally, regarding the changed country conditions issue and the evidence that was submitted, something else that the Board missed in consideration is the argument was that these petitioners were never considered for asylum because of the one-year filing deadline. The changed country conditions, the new evidence that was presented that the prior attorney should have when they filed the application. That relates to Bulgaria's accession into the EU and the fact that its full membership eliminated all the oversight from the European Commission. And I see that my time has expired. So unless there's further questions. Thank you, Your Honor. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement and the court will be in recess. I'll go ahead. Don't forget your. Okay. Okay. Okay.